IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **EQUITY MEDIA HOLDINGS** | § | **CASE NO. 4:08-BK-17646** |
| **CORPORATION,** et al. | § | **JOINTLY ADMINISTERED** |
| | § | |
| **DEBTORS** | § | **CHAPTER 11** |

**MOTION FOR ORDER AUTHORIZING THE DEBTORS TO
(I) SELL CERTAIN OF THEIR REMAINING TELEVISION STATIONS TO SILVER
POINT FINANCE, LLC, AS ADMINISTRATIVE AGENT FOR THE DEBTORS'
POST-PETITION LENDERS, PURSUANT TO CERTAIN ASSET PURCHASE
AGREEMENTS, AND (II) CONSUMMATE THE TRANSACTIONS THEREUNDER,
INCLUDING (A) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN
UNEXPIRED LEASES AND EXECUTORY CONTRACTS
AND (B) THE SALE OF CERTAIN ASSETS FREE AND
CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES**

Equity Media Holdings Corporation ("EMHC") and its subsidiary debtors in the

above jointly administered cases (the "Subsidiary Debtors"), [1] as debtors and debtors in

possession (collectively, the "Debtors"), respectfully represent:

**I.
SUMMARY OF RELIEF REQUESTED**

1.      By this motion (the "Motion"), the Debtors seek an order, pursuant to sections

363(b), 363(f), 365(a) and 365(f) of title 11 of the United States Code (the "Bankruptcy Code"),

and Bankruptcy Rules 6004 and 6006, authorizing and approving certain Purchase Agreements

(as defined below) and the consummation of the transactions thereunder.   The proposed sales

---

[1] The Subsidiary Debtors include Arkansas 49, Inc., EBC Detroit, Inc., EBC Harrison, Inc., Borger Broadcasting, Inc., EBC Jacksonville, Inc., C.A.S.H. Services, Inc., EBC Kansas City, Inc., Equity News Services, Inc., EBC Los Angeles, Inc., Denver Broadcasting, Inc., EBC Minneapolis, Inc., EBC Atlanta, Inc., EBC Nashville, Inc., EBC Panama City, Inc., EBC Buffalo, Inc., Fort Smith 46, Inc., Logan 12, Inc., Marquette Broadcasting, Inc., Nevada Channel 3, Inc., Nevada Channel 6, Inc., Newmont Broadcasting Corporation, EBC Provo, Inc., Price Broadcasting, Inc., Pullman Broadcasting, Inc., EBC Scottsbluff, Inc., Rep Plus, Inc., EBC Seattle, Inc., River City Broadcasting, Inc., EBC Southwest Florida, Inc., Roseburg Broadcasting, Inc., TV 34, Inc., EBC Syracuse, Inc., EBC Pocatello, Inc., EBC St. Louis, Inc., EBC Waterloo, Inc., La Grande Broadcasting, Inc., Montgomery 22, Inc., Shawnee Broadcasting, Inc., EBC Waco, Inc., Vernal Broadcasting, Inc., Wyoming Channel 2, Inc., H&H Properties Limited Partnership, Woodward Broadcasting, Inc., Montana Broadcasting Group, Inc., Central Arkansas Payroll Company, Montana License Sub, Inc., Equity Broadcasting Corporation, Equity Insurance Inc., KLRA, Inc., EBC Mt. Vernon, Inc., EBC Wichita Falls, Inc. and EBC Boise, Inc.

represent substantially all[2] of the Debtors' remaining television stations following months of extensive marketing efforts and a public auction held at the offices of the Debtors' counsel.   The Debtors will continue to operate their television stations and other assets for the foreseeable future as they seek FCC approval of the assignment of licenses in connection with such sales, which can take over three months to complete.   In addition, the Debtors continue to explore options for their remaining assets, including its network operation center (also known as the C.A.S.H. system), which is critical to the continuing operation of the stations, as well as various other assets including the Debtors' headquarters and all "Excluded Assets" under prior and pending purchase agreements.

2.       With respect to the proposed sale of the television stations discussed herein, no party has submitted a binding cash offer for these stations for a price greater than that reflected in the Purchase Agreements.   As a result, the Debtors have determined that the value of these assets can best be maximized by selling them to Silver Point Finance, LLC, the administrative agent under the Debtors' post-petition financing facility (in such capacity, on behalf of the lenders thereunder, the "DIP Agent") in satisfaction of a portion of the Debtors' post-petition indebtedness to such lenders.   The Debtors will entertain competing cash offers, if any, for these assets until the sale hearing (the "Sale Hearing") on this Motion.   In the absence of a higher or better cash offer, however, the Debtors request that the Court approve the Purchase Agreements and the consummation of the transactions thereunder.

---

[2] Certain of the Debtors' remaining stations are the subject of other motions filed, or to be filed, with this Court. For example, the Debtors have recently filed a motion seeking authority to assume certain pre-petition purchase agreements with Luken Broadcasting LLC and consummate the transactions thereunder (the "Motion to Assume"). The stations that are the subject of the Motion to Assume are excluded from the proposed sales described in this Motion.

---

## II.
## JURISDICTION

3.      This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334.   This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.
## BACKGROUND

4.      On December 8, 2008, EMHC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.      On December 16, 2008, the Subsidiary Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

6.      Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties, affairs and assets as debtors-in-possession.    The Debtors' chapter 11 cases are being jointly administered for procedural purposes under Case No. 4:08-BK-17646.

## IV.
## COMPANY BACKGROUND

7.      EMHC maintains its corporate headquarters and principal place of business in Little Rock, Arkansas.   The Debtors collectively own and operate television stations across the United States.   As of the filing of the this Motion, the Debtors have built and aggregated a total of 97 full and low power permits, licenses and applications that they own or have contracted to acquire.   The Debtors' stations are currently affiliated with broadcast networks as follows:   10 of the stations are affiliated with Univision Communications, Inc., eight are affiliated with MyNetworkTV, four are affiliated with FOX, three are affiliated with TeleFutura, and one is

affiliated with ABC.

8.    The Debtors are the second-largest affiliate group of the top-ranked Univision and TeleFutura networks with 13 affiliates combined, 12 of which are in the nation's top-65 Hispanic television markets.   The Debtors are one of the largest holders of broadcast spectrum in the United States.

## V.
## THE MARKETING PROCESS FOR TELEVISION STATIONS AND THE PRIOR AUCTION

9.    As the Court is aware from prior pleadings and hearings in these cases, EMHC has historically operated at a loss and, prepetition, had to rely on a combination of sales, borrowings and other capital raising activities to fund its operations and that of the Subsidiary Debtors.   When it became clear in 2008 that the Debtors would no longer be able to borrow sufficient funds, or raise sufficient capital, to fund their ongoing business operations, EMHC determined that a sale of some or all of its stations would be necessary.   Before the commencement of their chapter 11 cases, the Debtors retained brokers, marketed stations for sale, and executed a number of purchase agreements with purchasers.

10.    Since the commencement of their chapter 11 cases, the Debtors renewed those efforts in an effort to maximize the value of their assets for the benefit of their estates and creditors while cutting costs and minimizing operating losses.   The Debtors retained Patrick Communications L.L.C. ("Patrick Communications") to provide broker services to the Debtors in connection with the sale of their television stations (the "Stations").   The Debtors and Patrick Communications undertook an extensive marketing process for their Stations, including advertising in print media and electronic media.   Patrick Communications also "pushed" email advertising to hundreds of existing television station owners and other prospective purchasers.

Prospective purchasers were provided access to due diligence materials, including financial information, with respect to the Stations, and had the opportunity to submit bids for the Debtors' Stations.

11.     The Debtors sought, and obtained, an order from this Court establishing bidding procedures and scheduling an auction on April 16, 2009 (the "Auction") for the Stations.   At the Auction, certain of the Debtors' Stations – including the stations that are the subject of the Purchase Agreements – were withdrawn from the Auction due to a lack of interest and/or bids.

12.     On May 4, 2009, the Court entered an order approving the sale of the Stations that were sold at the Auction (the "Auction Sale Order").   Since the Auction and the entry of the Auction Sale Order, the Debtors have continued to market for sale those remaining Stations for which there had been no bids.

## VI.
## THE PURCHASE AGREEMENTS

13.     On June 2, 2009, the DIP Agent and certain of the Debtors entered into five (5) Asset Purchase Agreements (collectively, the "Purchase Agreements") relating to the following groups of stations:

| Agreement | Stations | Purchase Price (Credit Bid) |
|---|---|---|
| Asset Purchase Agreement between Silver Point Finance, LLC and Denver Broadcasting, Inc. (the "DBI Agreement") | K61DX<br>K21CV<br>KDEV-LP | $50,000.00 |
| Asset Purchase Agreement between Silver Point Finance, LLC, TV 34, Inc. and Ft. Smith 46, Inc. (the "Ft. Smith Agreement") | **TV 34, Inc.:**<br>KPBI-TV<br>KWFT-LP<br><br>**Ft. Smith 46, Inc.:** | $500,000.00 |

| | KFDF-CA<br>K33HE<br>KFFS-CA<br>KRAH-CA<br>KEGW-LP<br>KUFS-LP<br>KWNL-CA<br>K48FL<br>KSJF-CA<br>KKAF-CA<br>KHMF-CA<br>KXUN-LP | |
|---|---|---|
| Asset Purchase Agreement between Silver Point Finance, LLC and EBC Kansas City, Inc. (the "EBC Kansas City Agreement") | KUKC-LP | $1,000,000.00 |
| Asset Purchase Agreement between Silver Point Finance, LLC and Equity Media Holdings Corporation (the "EMHC Agreement") | KLRA-LP | $100,000.00 |
| Asset Purchase Agreement between Silver Point Finance, LLC and EBC Los Angeles, Inc. (the "EBC Los Angeles Agreement") | KIMG-LP | $50,000.00 |

14.    Copies of the Purchase Agreements are attached hereto as Exhibits "A" through "E".[3]  The Purchase Agreements are substantially similar in form, and each provide for the sale and assignment of certain licenses and authorizations of eligibility (the "Licenses") issued by the FCC and related assets.    The principal terms of the Purchase Agreements are as follows: [4]

- Station Assets : The Station Assets are defined in Section 1.1 of the Purchase Agreements and include, among others, (i) the Licenses; (ii) pending applications before the FCC which relate to the Stations; (iii) all of the respective Seller's land, leases, land purchase contracts, tower registrations,

---

[3]    Due to the voluminous nature of the schedules to some of the Purchase Agreements, complete copies thereof are not being mailed with the service copies of this Motion, but have been filed with the Bankruptcy Court and are available for download from the Bankruptcy Court's docket via PACER or from Debtors' counsel upon written request.

[4]    The summary of the Purchase Agreements set forth in this Motion is intended to briefly highlight the material terms of the Purchase Agreements and does not exactly duplicate the operative provisions thereof.    In the event of a conflict between this summary and the Purchase Agreements, the Purchase Agreements govern.

and tower permits relating to the Stations that are set forth and more fully described on Schedule 1.1(c) of each Purchase Agreement (the "Real Property"), (iv) all of the respective Seller's right, title and interests under the Assumed Contracts listed on Schedule 1.1(d) of each Purchase Agreement; and (v) all of the respective Seller's supplies, equipment, inventory and other property purchased but not installed.

- Excluded Assets:   The Station Assets do not include the following:   (i) all cash, cash equivalents, cash items, certificates of deposit, money market instruments, bank balances and rights in and to bank accounts, Treasury bills and marketable securities and other securities; (ii) deposits or prepaid charges; (iii) all claims, rights or interests of each Seller in or to any refund, rebate, abatement or other recovery for Taxes; (iv) all rights, claims or causes of action of each Seller against third parties relating to the Station Assets; (v) all rights, claims or causes of action of each Seller under the Bankruptcy Code, including chapter 5 causes of action; (vi) all contracts or policies of insurance and insurance plans, promissory notes, amounts due from employees, bonds, letters of credit or other similar items and any insurance proceeds receivable; (vii) certain corporate records and other books and records; (viii) all equipment and services related to centralized master control facilities located in Little Rock, Arkansas; and (ix) all rights of each Seller as of the Closing Date to payment for the sale of advertising time and other goods and services by the Stations prior to the Closing Date.

- Assumed Liabilities:   The DIP Agent shall assume all liabilities, costs and expenses related to or in respect of the Station Assets incurred or accrued after the Closing Date, and all liabilities, costs and expenses and performance obligations in respect of contracts being assumed which become due pursuant to the terms of such contracts on and after the Closing Date.

- Transfer Taxes:   The DIP Agent shall pay any Transfer Taxes resulting from the transactions contemplated by the Purchase Agreements.

- Termination:   The Purchase Agreements may be terminated (i) by either party in the event that FCC approval is denied or has not been received within six months (unless extended); (ii) by either party if the other party materially defaults and fails to cure; (iii) for any reason by the DIP Agent in its sole discretion within ninety (90) days of the date of the Purchase Agreements; and (iv) for such other reasons as set forth in Article 7 of the Purchase Agreements.

## VII.
## SUPPORT FOR RELIEF REQUESTED

15.   Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  To approve the sale of an asset, the Court must "find from the evidence

presented before him at the hearing a good business reason to grant such an application."
*Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063,
1071 (2d Cir. 1983).

16.     As described herein, sound business reasons exist justifying the sale of the Station
Assets to the DIP Agent. The Sellers have marketed the Station Assets extensively and have
determined that the price that would be realized from selling the Station Assets to the DIP Agent
under the Purchase Agreements represents the highest and best price the Sellers can currently
obtain for the Station Assets.

17.     Pursuant to this Court's Final Order, dated February 20, 2009, authorizing the
Debtors to (i) Obtain Post-Petition Financing and (ii) Repay Claims of Certain Prepetition
Secured Parties (the "DIP Order"), the Debtors were authorized to enter into and incur secured
debt under the Debtor-in-Possession Financing Agreement, dated as of January 30, 2009 (the
"DIP Credit Agreement"), among certain of the Debtors as Borrowers, SPCP Group, LLC and
SPF CDO I, Ltd. as Lenders (together, the "DIP Lenders"), and the DIP Agent.

18.     Section 16 of the DIP Credit Agreement authorizes the DIP Agent, on behalf of
the DIP Lenders, to credit bid obligations under the DIP Credit Agreement (the "DIP
Obligations") for any of the Property (as defined in the DIP Credit Agreement) of any of the
Debtors pursuant to section 363(k) of the Bankruptcy Code. Pursuant to the Purchase
Agreements, the DIP Agent shall credit bid, on behalf the DIP Lenders, claims in respect of such
DIP Obligations and offset such claims against the purchase price of the Station Assets pursuant
to section 363(k) of the Bankruptcy Code and Section 16 of the DIP Credit Agreement.

19.     As a result of the extensive marketing efforts for the Station Assets and the fact
that the Debtors have determined that the price that would be realized from selling the Station
Assets to the DIP Agent under the Purchase Agreements represents the highest and best price the

Sellers can currently obtain for the Station Assets, the Debtors request that the Court approve the sale of the Station Assets to the DIP Agent.

## VIII.
## THE ASSETS SHOULD BE SOLD FREE OF LIENS, CLAIMS AND ENCUMBRANCES

20.     Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property free and clear of liens, claims and encumbrances (the "Liens") if one of the following conditions is satisfied:

(1)     applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).   *See In re Elliot,* 94 B.R. 343, 345 (E.D. Pa. 1988) (court may approve sale "free and clear" provided at least one of the subsections is met); *In re Healthco International, Inc.,* 174 B.R. 174, 176 (Bankr. D. Mass. 1994) (section 363(f) (5) has been interpreted to mean "a payment constituting less than full payment of the underlying debt.").   *See also In re Union Hosp. Ass'n. of the Bronx,* 226 B.R. 134, 138-39 (Bankr. S.D.N.Y. 1998) (publication notice was adequate to discharge claims of unknown claimants); *In re Downtown Athletic Club*, 2000 WL 744126 at *3 (Bankr. S.D.N.Y. June 9, 2000) (free and clear sale under the debtor's plan of reorganization was binding on the debtor's creditors who received notice of the confirmation hearings).

21.     To facilitate the proposed sale, the Debtors request that the Court authorize the

sale, pursuant to section 363(f) of the Bankruptcy Code, free and clear of Liens. The Sellers believe that under the DIP Credit Agreement, the DIP Lenders are the only creditors with a Lien on the Station Assets. Under the Purchase Agreements, the DIP Agent is credit bidding, on behalf of the DIP Lenders, claims in respect of the DIP obligations and has consented to the sale of the Station Assets under the Purchase Agreements.

22. Consequently, the Debtors believe that the requirements of section 363(f) have been satisfied and request that the Court authorize the sale of the Station Assets free and clear of all Liens.

## IX.
## ASSUMPTION AND ASSIGNMENT OF CONTRACTS

23. Pursuant to Section 1.5 of each of the Purchase Agreements, the DIP Agent has the right to add or remove any of the leases or executory contracts set forth on Schedules 1.1(c) and 1.1(d), at any time prior to the deadline for the Sellers to assume or reject its contracts and leases. Subject thereto, and pursuant to this Motion, the Sellers seek the Court's authority to assume the following contracts, agreements and leases (collectively, the "Contracts") pursuant to section 365(a) of the Bankruptcy Code, *effective as of the Closing Date* (as defined in the Purchase Agreements), and assign such contracts to the DIP Agent:

| Counter-Party | Seller | Name of Contract/Lease |
|---|---|---|
| AAT Communications (SPA) as assignee of Clark Communications, Inc. | Fort Smith 46, Inc., as assignee of Pharis Broadcasting, Inc. | Tower Space Lease Agreement dated February 1, 2000 (KSJF-CA) |
| AAT Communications (SPA) as assignee of Clark Communications, Inc. | Fort Smith 46, Inc., as assignee of Pharis Broadcasting, Inc. | Tower Space Lease Agreement dated February 1, 2000 (KRAH-CA) |
| AAT Communications Corp. | Ft. Smith 46, Inc. | License, dated February 1, 2006 (Mt. Magazine site) |
| AAT Communications Corp. | Ft. Smith 46, Inc. | License, dated February 1, 2006 (Cavanal site) |
| ABC Television Network | Denver Broadcasting, Inc. | Network Affiliation Agreement dated January 8, 2008 |

| American Tower Asset Sub, LLC | Denver Broadcasting, Inc. | License Agreement dated March 20, 2007 |
|---|---|---|
| American Towers as successor to Westark Towers, Inc. | Fort Smith 46, Inc., as assignee of Pharis Broadcasting, Inc. | Tower Lease Agreement dated April 18, 1995, modified in Addendum dated July 14, 1995. |
| Atlas Worldwide | Denver Broadcasting, Inc. | Programming Agreement dated February 1, 2007 (Eye for an Eye) |
| B In Tune TV clearances | | Email between Ed Baruch and Jeff Timpa dated June 25, 2008 |
| Buena Vista Television | TV 34, Inc. | Programming Agreement dated June 30, 2008 (Ebert & Roeper) |
| Buena Vista Television | Ft. Smith 46, Inc. | Programming Agreement dated June 26, 2003 (My Wife and Kids) |
| Buena Vista Television | Ft. Smith 46, Inc. | Programming Agreement dated January 13, 2005 (Buena Vista V Program) |
| Buena Vista Television | TV34, Inc. | Programming Agreement dated May 13, 2008 (Wizard's First Rule) |
| Buena Vista Television | Denver Broadcasting, Inc. | Programming Agreement dated January 2, 2008 (Lost) |
| Buena Vista Television | KPBI-TV | Schedule Change to 13th Warrior Window |
| Buena Vista Television | Ft. Smith 46, Inc. | Programming Agreement dated September 15, 2006 (Scrubs) |
| Buena Vista Television | Ft. Smith, 46, Inc. | Programming Agreement dated September 28, 2007 (Scrubs) |
| Buena Vista Television | Ft. Smith 46, Inc. | Programming Agreement dated October 18, 2007 (Who Wants to be a Millionaire) |
| Buena Vista Television | TV 34, Inc. | Programming Agreement dated February 24, 2009 (Legend of the Seeker) |
| Buena Vista Television | TV 34, Inc. | Programming Agreement dated May 13, 2008 (Legend of the Seeker) |
| Buena Vista Television | TV 34, Inc. | Programming Agreement dated February 24, 2009 (At the Movies) |
| Buena Vista Television | Ft. Smith 46, Inc. | Programming Agreement dated January 2, 2008 (Lost) |
| Buena Vista Television | KDEV-LP | Programming Agreement dated February 4, 1998 |
| Buena Vista Television | Fort Smith 46, Inc. | Programming Agreement dated December 27, 2004 (Buena Vista VI) |
| Clark Communications, Inc. | Fort Smith, Inc. | Tower Space Lease Agreement dated June 1, 2003    (KEGW-LP) |

| Clark Communications, Inc. | Ft. Smith 46, Inc. | Tower Space Lease Agreement, dated June 1, 2002 |
|---|---|---|
| Clark Communications, Inc. | Ft. Smith 46, Inc. | Tower Space and Equipment Lease Agreement dated August 3, 2001 |
| Clark Communications, Inc. | Fort Smith, Inc. | Tower Space Lease Agreement dated June 1, 2003 (KFFS-LP) |
| Clark Communications, Inc. | Fort Smith, Inc. | Tower Space Lease Agreement dated June 1, 2003 (KKAF-LP) |
| Connection III Entertainment | Equity Broadcasting | Programming Agreement dated June 23, 2008 |
| Daystar Television Network | EBC Kansas City, Inc. | Tower Space Agreement, on a month-to-month basis (verbal agreement – no paper contract exists) |
| Debmar Studios | Ft. Smith 46, Inc. | Programming Agreement dated July 12, 2004 (South Park) |
| Debmar-Mercury | Denver Broadcasting, Inc. | Programming Agreement dated May 21, 2008 (Trivial Pursuit) |
| Debmar-Mercury | Denver Broadcasting, Inc. | Programming Agreement dated May, 21, 2008 (American Chopper) |
| Debmar-Mercury, LLC | Fort Smith 46, Inc. | Programming Agreement dated June 16, 2008 (Family Feud) |
| Entertainment Studios | Denver Broadcasting, Inc. | Programming Agreement commencing Fall 2008 (RecipeTV) |
| Entertainment Studios, Inc. | Denver Broadcasting, Inc. | Programming Agreement dated March 27, 2008 (Entertainmentstudios.com) |
| Hash Communications, LLC | TV 34, Inc. | Master Lease Agreement dated July 31, 2000 |
| Hash Communications, LLC | Fort Smith 46 | Tower License Agreement dated August 7, 2003 |
| Jerry C. Clark and Beck M. Clark d/b/a Clark Communications, Inc. | TV 34, Inc. | Tower/Ground Lease Agreement dated September 2, 2004 |
| Judge Mathis | Ft. Smith 46, Inc. | Programming Agreement dated January 16, 2008 (Judge Mathis) |
| Litton Entertainment | Denver Broadcasting, Inc. | Programming Agreement dated September 16, 2008 (Animal Exploration with Jarod Miller) |
| Meredith Corporation assignee & successor to KSMO, Inc. | EBC Kansas City, Inc. | Sublease dated December 26, 2006 |
| MGM | Ft. Smith 46, Inc. | Programming Agreement dated February 20, 2008 (Stargate Atlantis) |
| MGM | Denver Broadcasting, Inc. | Programming Agreement dated |

| | | February 20, 2008 (MGM Presents) |
|---|---|---|
| MGM | Denver Broadcasting, Inc. | Programming Agreement dated September 19, 2008 (MGM Weekly) |
| MGM | Denver Broadcasting, Inc. | Programming Agreement dated January 14, 2009 (Ron Hazelton's House Calls) |
| MGM | Ft. Smith 46, Inc. | Programming Agreement dated November 12, 2002 (Premiere Feature Package Deal Memo) |
| MyNetworkTV | Fort Smith 46, Inc. (formerly for KFDF-CA) | Programming Affiliation Agreement dated March 29, 2006 |
| NBC | TV 34, Inc. | Programming Agreement dated October 8, 2008 (Jerry Springer) |
| NBC | TV 34, Inc. | Programming Agreement dated August 1, 2008 (Maury) |
| NBC | TV 34, Inc. | Programming Agreement dated October 8, 2008 (Monk) |
| NBC | TV 34, Inc. | Programming Agreement dated August 1, 2008 (The Wall Street Journal Report) |
| Outdoorsman International | Denver Broadcasting, Inc. | Programming Agreement dated August 28, 2008 (The Outdoorsman) |
| Outdoorsman International | KPBI | Programming Agreement dated January 2008 (The Outdoorsman) |
| Outsdoorsman International | KPBI | Programming Agreement dated August 28, 2008 (The Outdoorsman) |
| SiteExcell Towers, LLC | Equity Broadcasting Corporation (KLRA-LP) | Antenna Site Agreement dated March 15, 2007 |
| Sony Pictures | Ft. Smith 46, Inc. | Programming Agreement dated March 2008 (Judge Hatchett) |
| Sony Pictures | Ft. Smith 46, Inc. | Programming Agreement dated March 6, 2009 (Judge Hatchett) |
| Sony Pictures Television | Denver Broadcasting, Inc. | Programming Agreement dated January 27, 2009 (Seinfeld) |
| Sony Pictures Television | KPBI-TV | Programming Agreement dated August 16, 2000 (MGM Premiere 2) |
| Sony Pictures Television | Ft. Smith 46, Inc. | Programming Agreement dated August 27, 2004 (Showcase II) |
| St. Louis Cardinal Baseball | Ft. Smith 46, Inc. | Programming Agreement dated February 2, 2006 (KFDF) |
| Target Vision | Denver Broadcasting, Inc. | Programming Agreement dated August 1, 2008 (Sports Stars of |

| | | Tomorrow) |
|---|---|---|
| Telco Productions, Inc. | Fort Smith 46, Inc. | Programming Agreement dated September 16, 2008 (Dog Tales) |
| Telco Productions, Inc. | KFDF/KPBI | Programming Agreement dated August 1, 2008 (Missing) |
| The B InTune Foundation | KPBI | Programming Agreement dated August 22, 2009 (B InTune TV) |
| Tribune Entertainment | Denver Broadcasting, Inc. | Programming Agreement dated October 19, 2007 (Ron Hazelton's House Calls) |
| Trifecta Entertainment | Denver Broadcasting, Inc. | Programming Agreement (Hollywood Shootout) |
| Trifecta Entertainment | Ft. Smith 46, Inc. | Programming Agreement dated June 1, 2008 (UFC Wired) |
| Twentieth Television | Ft. Smith 46, Inc. | Programming Agreement dated January 2, 2008 (Boston Legal) |
| Twentieth Television | Ft. Smith 46, Inc. | Programming Agreement dated January 2, 2008 (Cristina's Court) |
| Twentieth Television | Ft. Smith 46, Inc. | Programming Agreement dated January 2, 2008 (Divorce Court) |
| Twentieth Television | Ft. Smith 46, Inc. | Programming Agreement dated January 2, 2008 (Judge Alex) |
| Twentieth Television | Ft. Smith 46, Inc. | Programming Agreement dated January 2, 2008 (The Morning Show with Mike and Juliet) |
| Twentieth Television | Ft. Smith 46, Inc. | Programming Agreement dated October 26, 2005 (Century Premiere – Robots) |
| Twentieth Television, Inc. | Ft. Smith 46, Inc. | Programming Agreement dated March 13, 2007 (Century 20) |
| Twentieth Television, Inc. | Ft. Smith 46, Inc. | Programming Agreement dated March 13, 2007 (Century Premiere) |
| U.S. Dept. of Interior Bureau of Land Management | Denver Broadcasting, Inc. | Tower Site Lease dated October 16, 1990 |
| Univision Network Limited Partnership | EBC Kansas City, Inc. | Network Affiliation Agreement dated March 30, 2007 |
| Univision Network Limited Partnership | River City Broadcasting, Inc. (KLRA-LP) | Network Affiliation Agreement dated March 30, 2007 |
| Univision Network Limited Partnership | Fort Smith 46, Inc. | Network Affiliation Agreement dated March 30, 2007 (KXUN-LP) |
| Warner Bros. Television | Ft. Smith 46, Inc. | Programming Agreement dated January 16, 2008 (This Old House) |
| Warner Bros. Television | Ft. Smith 46, Inc. | Programming Agreement dated March 15, 2005 (George Lopez) |
| Warner Bros. Television | Ft. Smith 46, Inc. | Programming Agreement dated January 16, 2008 (Extra) |
| Warner Bros. Television | Ft. Smith 46, Inc. | Programming Agreement dated January 16, 2008 (People's Court) |

| Warner Bros. Television | Ft. Smith 46, Inc. | Programming Agreement dated July 10, 2007 (Without a Trace) |
| --- | --- | --- |
| Warner Bros. Television | Ft. Smith 46, Inc. | Programming Agreement dated February 17, 2009 (Without a Trace) |
| Warner Bros. Television | Ft. Smith 46, Inc. | Programming Agreement dated December 16, 2008 and January 16, 2008 (Bonnie Hunt Show) |
| Warner Brothers | Denver Broadcasting, Inc. | Programming Agreement dated October 6, 2006 (Two and a Half Men) |
| Warner Brothers Domestic Television Distribution | Ft. Smith 46, Inc. | Programming Agreement dated August 2, 2007 (for feature films) |
| Warner Brothers domestic Television Distribution | Ft. Smith 46, Inc. | Programming Agreement dated August 1, 2007 |

24.     Section 365(a) of the Bankruptcy Code authorizes a debtor in possession to assume an executory contract or unexpired lease subject to bankruptcy court approval. Section 365(a) of the Bankruptcy Code provides:

> Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor

25.     11 U.S.C. § 365(a). Section 365(f) of the Bankruptcy Code authorizes a debtor to assign executory contracts and unexpired leases if certain conditions are satisfied. Section 365(f)(2) provides:

> (2)     The trustee may assign an executory contract or unexpired lease of
>
> the debtor only if-
>
> (A)     the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B)     adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

26.    The standard that is historically applied in determining whether an executory contract or unexpired lease should be assumed is the debtor's "business judgment" that assumption is in its economic best interests.   *In re Food Barn Stores, Inc.,* 107 F.3d 558, 567, n.16 (8th Cir. 1997); *Nostas Assoc. v. Costich (In re Klein Sleep Products, Inc.),* 78 F.3d 18 (2d Cir. 1996); *In re Orion Pictures Corp., 4* F.3d 1095 (2d Cir. 1993); *see also NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 523 (1984) (describing business judgment test as "traditional"); *In re Child World, Inc.,* 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992) ("A debtor may assume or reject an unexpired lease in accordance with 11 USC § 365(a) in the exercise of its best business judgment."); *In re III Enterprises, Inc. V,* 163 B.R. 453,469 (Bankr. E.D. Pa. 1994) (citations omitted) ("A debtor need only show that its decision to assume or reject the contract is an exercise of sound business judgment."); *In re Jr. Food Mart of Arkansas, Inc.,* 131 B.R. 116 (Bankr. E.D. Ark. 1991) .

27.    That standard is clearly satisfied with respect to the assumption of the Contracts because the Sellers have determined in the exercise of their sound business judgment that the sale of the Station Assets and the assignment of the Contracts to the DIP Agent pursuant to the terms of the Purchase Agreements will maximize the Sellers' economic interest in the Station Assets and Contracts and is in the best interest of their estates and creditors.   The assignment of the Contracts to the DIP Agent is in the best interest of the counterparties to such Contracts because the DIP Agent has agreed (subject to certain conditions set forth in Section 1.5 of each Purchase Agreement)[5] to pay to cure monetary defaults under such Contracts.   The Sellers also believe that the assignment of the Contracts to the DIP Agent will, in and of itself, provide the non-debtor parties to the

---

[5] For example, in the event that the Court determines that the cure amount for a Contract exceeds by more than 5% the amount set forth on Schedule 1.5, the DIP Agent may elect not to assume such Contract in which case the DIP Agent and the respective Seller will both be released of their obligation to assume and assign such Contract.

Contracts with adequate assurance of future performance thereof.

## X.
## CURE AMOUNTS

28.     Section 365(b)(1) of the Bankruptcy Code provides that in the event there has

been a default in an executory contract or unexpired lease, the debtor in possession must (i) cure,

or provide adequate assurance that the debtor will promptly cure such default, (ii) compensate, or

provide adequate assurance that the debtor will promptly compensate the counterparty for any

actual pecuniary loss resulting from such default, and (iii) provide adequate assurance of future

performance of such contract or lease.

29.     According to the Sellers' books and records, the Sellers' were in monetary

default under certain of the Contracts and currently owe the following amounts (the "Cure

Amounts") to the contract counter-parties identified below:

| Counter-Party | Cure Amount | |
|---|---|---|
| **TV 34** | | |
| Buena Vista Television (Who Wants to Be A Millionaire) | $7,830.00 | |
| Clark Communications | $9,561.28 $1,838.72 | (Pre-Petition) (Post-Petition) |
| Debmar Mercury, LLC (Family Feud) | $5,199.97 | |
| Debmar Studios (South Park) | $5,633.29 | |
| Hash Communication, LLC | $9,019.20 $580.80 | (Pre-Petition) (Post-Petition) |
| Twentieth Century Fox TV Syndication (Cristina's Court, Divorce Court, Judge Alex and Morning Show) | $8,233.30 | |
| Universal City Studios/NBC (Jerry Springer and Maury) | $18,108.34 | |
| Warner Bros. (Two and a Half Men) | $39,587.00 | |
| **Denver Broadcasting** | | |
| Sony Pictures (Seinfeld) | $2921.48 | |
| Spectrasite 23967 | $2,722.07 | Pre-Petition |

| | | |
|---|---|---|
| | $2,086.24 | Post-Petition |
| Warner Bros. (Two and a Half Men) | $5,195.00 | |
| **EBC Kansas City** | | |
| Dean Realty Co. | $7,938.24<br>$7,667.80 | (Pre-Petition)<br>(Post-Petition) |
| Univision | $8,249.48<br>$335.33 | (Pre-Petition)<br>(Post-Petition) |
| **Fort Smith 46** | | |
| American Tower 22796 | $3,131.44<br>$3,065.12 | (Pre-Petition)<br>(Post-Petition) |
| Buena Vista Television (My Wife and Kids) | $6,066.69 | |
| Clark Communications | $11,244.56<br>$4,745.44 | (Pre-Petition)<br>(Post-Petition) |
| Hash Communications, Inc. | $7,516.00<br>$1,484.00 | (Pre-Petition)<br>(Post-Petition) |

30.     Except as set forth in the charts above, the Sellers believe they are not in monetary default under any of the other Contracts and, as such, are not required to cure any defaults under such Contracts pursuant to section 365(b)(1) of the Bankruptcy Code.   To satisfy the identified Cure Amounts, the Purchase Agreements provide that the DIP Agent will pay the Cure Amounts at the Closing (subject to the right of the DIP Agent to elect to reject any Agreement prior to Closing as set forth in more detail in the Purchase Agreements).

31.     The Sellers have provided notice of this Motion and the proposed assumption and assignment of the Contracts to the DIP Agent to all non-debtor parties to the Contracts. In the event that a party files an objection to proposed Cure Amount, and the Sellers are unable to resolve such objection prior to a hearing on the Motion, the Sellers intend to ask the Court to either (a) overrule the objection on the merits, (b) authorize the assumption and assignment of the Contract subject to the Sellers escrowing the disputed portion of the Cure Amount pending a determination by the Court of such amount upon notice of a future

hearing, or (c) reject such Contract with the consent of the DIP Agent. Except as provided in the preceding sentence, the Sellers request that upon assumption and assignment of the Contracts, all non-debtor parties thereto be forever barred from asserting a Cure Claim against the Sellers or the DIP Agent. The Sellers further request that they be relieved from any liability for any breach of the Contracts occurring after the assignment to the DIP Agent pursuant to section 365(k) of the Bankruptcy Code.

32. The Sellers submit that the foregoing procedures provide a fair and reasonable means of ensuring that non-debtor parties to the Contracts receive notice of the assumption and assignment of their Contracts without paying a cure amount or, with respect to those parties identified in the charts above, the Sellers' determination of the Cure Amount and the opportunity to object thereto. Based upon the foregoing, the Sellers submit that the assumption and assignment of the Contracts to the DIP Agent, subject to the procedures outlined herein for resolving disputes over Cure Amounts, is in the best interest of the Sellers, their creditors and their chapter 11 estates and should be approved by this Court.

## XI.
## ORDER EFFECTIVE IMMEDIATELY

33. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property... is stayed until the expiration of 10 days after the entry of the order, unless the court orders: otherwise." Fed. R. Bankr. P. 6004(h). Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease. . . is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d). The Sellers desire to consummate the transactions as soon as possible and the Sellers request that any order granting this Motion and approving the Purchase Agreements be effective immediately by providing that the 10-day stay,

pursuant to either or both Bankruptcy Rules 6004(g) and 6006(h), is inapplicable.

## XII.
## NOTICE

34.     Notice of this Motion has been provided in accordance with this Court's Order Establishing Notice Procedures, dated April 1, 2009 [Docket # 338], by the Debtors having provided notice to the following: (i) the Office of the United States Trustee for the Eastern District of Arkansas; (ii) counsel for Silver Point Finance L.L.C., the administrative agent under the Debtors' post-petition financing facility; (iii) the Debtors' other secured creditors; (iv) the Official Committee of Unsecured Creditors; (v) the creditors holding the 30 largest unsecured claims against the Debtors' estates (on a consolidated basis); (vi) those persons who have formally appeared and requested service of these cases pursuant to Bankruptcy Rule 2002; (viii) Luken Broadcasting; (ix) all counterparties to the Contracts; and (x) the Securities and Exchange Commission, the Internal Revenue Service and the Federal Communications Commission. The Debtors respectfully submit that such notice is sufficient under the circumstances and that no other notice of this Motion is required.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated:   June 5, 2009                         Respectfully submitted,

                                              NELIGAN FOLEY LLP

                                              By:   /s/ Patrick J. Neligan, Jr.
                                                    Patrick J. Neligan, Jr.
                                                    Texas State Bar No. 14866000
                                                    pneligan@neliganlaw.com
                                                    James P. Muenker
                                                    Texas State Bar No. 24002659
                                                    jmuenker@neliganlaw.com

                                                    325 N. St. Paul, Suite 3600
                                                    Dallas, TX   75201
                                                    Telephone:   (214) 840-5300
                                                    Facsimile:   (214) 840-5301


                                              JAMES F. DOWDEN, P.A.

                                                    James Dowden
                                                    jdowden@gmail.com

                                                    212 Center Street, Tenth Floor
                                                    Little Rock, AR   72201
                                                    Telephone:   (501) 324-4700
                                                    Facsimile:   (501) 374-5463

                                              COUNSEL FOR DEBTORS AND
                                              DEBTORS-IN-POSSESSION

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served via United States Mail, First Class postage prepaid on each of the parties on the attached service list on the 5th day of June, 2009.

/s/ Patrick J. Neligan, Jr.
Patrick J. Neligan, Jr.

## NOTICE OF OBJECTION DEADLINE AND HEARING DATE

**THIS MOTION WAS FILED ON JUNE 5, 2009. ANY OBJECTIONS OR RESPONSES TO THE MOTION MUST BE FILED WITH THE UNITED STATES BANKRUPTCY COURT, 300 WEST 2ND STREET, LITTLE ROCK, ARKANSAS 72201 (THE "BANKRUPTCY COURT"), AND A COPY SUBMITTED TO COUNSEL FOR THE DEBTORS, ON OR BEFORE JUNE 25, 2009. A HEARING ON THIS MOTION WILL BE HELD AT THE BANKRUPTCY COURT ON JUNE 26, 2009 AT 10:00 A.M.**