IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| EQUITY MEDIA HOLDINGS | § | CASE NO. 4:08-BK-17646 |
| CORPORATION, et al. | § | JOINTLY ADMINISTERED |
| | § | |
| DEBTORS | § | CHAPTER 11 |

### ORDER AUTHORIZING AND APPROVING (I) THOSE CERTAIN ASSET PURCHASE AGREEMENTS ENTERED INTO WITH SILVER POINT FINANCE, LLC, AS ADMINISTRATIVE AGENT FOR THE DEBTORS' POST-PETITION LENDERS, AND (II) THE CONSUMMATION OF THE TRANSACTIONS THEREUNDER, INCLUDING (A) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS, AND (B) THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES

Upon the motion, dated June 5, 2009 (the "Motion") [Docket #434], filed by Equity Media Holdings Corporation ("EMHC") and its subsidiary debtors in the above jointly administered cases (the "Subsidiary Debtors"),[1] as debtors and debtors-in-possession, for entry of an order pursuant to sections 363(b), 363(f), 365(a) and 365(f) of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing and approving the sale of certain of the Debtors' television stations and related assets (the "Stations") to Silver Point Finance, LLC, the administrative agent under the Debtors' post-petition financing facility (in such capacity, on behalf of the lenders thereunder, the "DIP Agent"), including (a) the assumption and assignment

---

[1] The Subsidiary Debtors include Arkansas 49, Inc., EBC Detroit, Inc., EBC Harrison, Inc., Borger Broadcasting, Inc., EBC Jacksonville, Inc., C.A.S.H. Services, Inc., EBC Kansas City, Inc., Equity News Services, Inc., EBC Los Angeles, Inc., Denver Broadcasting, Inc., EBC Minneapolis, Inc., EBC Atlanta, Inc., EBC Nashville, Inc., EBC Panama City, Inc., EBC Buffalo, Inc., Fort Smith 46, Inc., Logan 12, Inc., Marquette Broadcasting, Inc., Nevada Channel 3, Inc., Nevada Channel 6, Inc., Newmont Broadcasting Corporation, EBC Provo, Inc., Price Broadcasting, Inc., Pullman Broadcasting, Inc., EBC Scottsbluff, Inc., Rep Plus, Inc., EBC Seattle, Inc., River City Broadcasting, Inc., EBC Southwest Florida, Inc., Roseburg Broadcasting, Inc., TV 34, Inc., EBC Syracuse, Inc., EBC Pocatello, Inc., EBC St. Louis, Inc., EBC Waterloo, Inc., La Grande Broadcasting, Inc., Montgomery 22, Inc., Shawnee Broadcasting, Inc., EBC Waco, Inc., Vernal Broadcasting, Inc., Wyoming Channel 2, Inc., H&H Properties Limited Partnership, Woodward Broadcasting, Inc., Montana Broadcasting Group, Inc., Central Arkansas Payroll Company, Montana License Sub, Inc., Equity Broadcasting Corporation, Equity Insurance Inc., KLRA, Inc., EBC Mt. Vernon, Inc., EBC Wichita Falls, Inc. and EBC Boise, Inc.

of certain unexpired leases and executory contracts, and (b) the sale of certain assets free and clear of all liens, claims and encumbrances; and the Limited Objection of American Broadcasting Companies, Inc. to the Motion [Docket No. 454] (the "ABC Objection"); and the Objection of Valley Bank to the Motion [Docket No. 453] (the "Valley Bank Objection"); and the Response of Univision Communications, Inc. to the Motion [Docket No. 458] (the "Univision Response"); and a hearing having been held before the Court on June 26, 2009 to consider the Motion and the relief requested therein (the "Sale Hearing"); and after due deliberation and sufficient cause appearing therefor;

<center>IT IS HEREBY FOUND AND DETERMINED:</center>

A. The Court has jurisdiction to consider the Motion and the relief requested therein as it pertains to this Order pursuant to 28 U.S.C. §§ 157 and 1334.

B. As evidenced by the certificate of service filed with the Court, and based on the representations of counsel at the Sale Hearing, (A) proper, timely, adequate, and sufficient notice of the Motion and the relief requested therein, the Purchase Agreements (as defined below) and the transactions contemplated therein, and the Sale Hearing has been provided in accordance with sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9013 and 9014, and this Court's Order Establishing Notice Procedures, dated April 1, 2009 [Docket # 338], by the Debtors having provided notice to the following: (i) the Office of the United States Trustee for the Eastern District of Arkansas (the "U.S. Trustee"); (ii) counsel for the DIP Agent; (iii) the Debtors' other secured creditors; (iv) the creditors holding the 30 largest unsecured claims against the Debtors' estates (on a consolidated basis); (v) those persons who have formally appeared and requested service of these cases pursuant to Bankruptcy Rule 2002; (vi) the Securities and Exchange Commission, the Internal Revenue Service and the Federal

Communications Commission; (vii) counter-parties to the Contracts (as defined in the Motion), and (viii) the Official Committee of Unsecured Creditors; (B) the form of this Order was served on the foregoing parties; (C) such notice was good and sufficient and appropriate under the particular circumstances; and (D) no other or further notice of the Motion, this Order, the Purchase Agreements or the Sale Hearing is required.

C. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein and this Order has been afforded to all those parties listed in paragraph B above.

D. Pursuant to the Asset Purchase Agreements, dated as of June 2, 2009, attached hereto as Exhibits "A" through "D",[2] the DIP Agent shall purchase: (i) KPBI-TV, KWFT-LP, KFDF-CA, K33HE, KFFS-CA, KRAH-CA, KEGW-LP, KUFS-LP, KWNL-CA, K48FL, KSJF-CA, KKAF-CA, KHMF-CA and KXUN-LP for an aggregate purchase price of $500,000.00; (ii) KUKC-LP for an aggregate purchase price of $1,000,000.00; (iii) KLRA-LP for an aggregate purchase price of $100,000.00; and (iv) KIMG-LP for an aggregate purchase price of $50,000.00.

E. Each of the Purchase Agreements was negotiated at arm's-length and proposed and entered into by and among the respective Sellers and the DIP Agent without collusion and in good faith. The DIP Agent is a good faith purchaser in accordance with section 363(m) of the Bankruptcy Code and is entitled to all of the protections afforded thereby. The good faith of the Sellers and the DIP Agent is evidenced by, among other things, the following facts: (1) the Sellers and the DIP Agent have engaged in substantial arms length negotiations in good faith,

---

[2] The Asset Purchase Agreements are collectively referred to herein as the "Purchase Agreements" and the assets conveyed thereunder are collectively referred to herein as the "Assets". The Debtors that are parties to the Purchase Agreements are collectively referred to herein as the "Sellers". Unless otherwise stated, all capitalized terms not defined herein shall have the same meaning as set forth in the Purchase Agreements and the Sale Motion, as applicable.


and the Purchase Agreements and related documents executed or to be executed thereunder are the product of such negotiations among the parties; (2) the Sellers conducted a competitive sales process during which other parties had a full, fair and reasonable opportunity to submit competing bids for the Assets including offering the Assets for sale at an auction held on April 16, 2009 subject to higher and better offers in accordance with a prior Order of this Court and no such bids or offers were received for any of the Assets; (3) the Sellers have determined that the DIP Agent's bid as reflected in each of the Purchase Agreements was the highest and best offer for the respective Assets; (4) no common identity of directors or controlling stockholders exists between the DIP Agent and the respective Sellers; and (5) all payments to be made in connection with the Purchase Agreements have been disclosed.

F. The relief sought in the Motion is in the best interests of the Sellers, their estates, their creditors, and all parties in interest.

G. The Purchase Agreements constitute the highest and best offer for the respective Assets, and will provide a greater recovery for each of the respective Sellers' estates than would be provided by any other available alternative. Each Seller's determination that the respective Purchase Agreement constitutes the highest and best offer for the Assets constitutes a valid and sound exercise of such Seller's business judgment.

H. Each Purchase Agreement represents a fair and reasonable offer to purchase the subject Assets under the circumstances of these chapter 11 cases. No other person or entity or group of entities has offered to purchase the respective Assets for greater economic value to the respective Seller's estate than the DIP Agent.

I. The DIP Agent holds valid, enforceable liens and claims on the Assets subject to each respective Purchase Agreement, and was entitled to credit bid pursuant to section 363(k) of

the Bankruptcy Code in an amount not less than the amount of its respective credit bid.

J.    Approval of the Sale Motion and the Purchase Agreements and the consummation of the transactions contemplated thereby is in the best interests of the Sellers, their stakeholders, their estates and other parties in interest.

K.    The Sellers have demonstrated compelling circumstances, advanced sound and sufficient business justification, and it is a reasonable exercise of their business judgment, to: (i) enter into each of the Purchase Agreements; and (ii) consummate the transactions contemplated therein (the "Sale Transactions") prior to, and outside of, a chapter 11 plan.

L.    The consummation of the Sale Transactions is properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 365(a), 365(b) and 365(f) of the Bankruptcy Code, and all of the applicable provisions of such sections have been complied with in respect of the Sale Transactions.

M.    The executory contracts and leases that will be transferred, assigned and conveyed to the DIP Agent under the Purchase Agreements and were identified in the Motion (the "Assumed Contracts") are valid and enforceable and have not been terminated by operation of law or otherwise and are capable of being assumed and assigned under section 365 of the Bankruptcy Code.

N.    Other than as set forth in the Motion, neither the Sellers nor any of their Affiliates is in default under any of the Assumed Contracts. Except for the Cure Amounts set forth in the Motion, for purposes of sections 365(b) and (f) of the Bankruptcy Code, (i) there is no default under any of the Assumed Contracts which would require the applicable Seller to (x) cure, or provide adequate assurance that such Seller will promptly cure, such default, or (y) compensate, or provide adequate assurance that such Seller will compensate, any counterparty to the Assumed

Contracts for any actual pecuniary loss to such party resulting from such default, and (ii) the DIP Agent has provided adequate assurance of future performance under each of the Assumed Contracts by demonstrating sufficient financial wherewithal to perform its obligations under such Assumed Contracts.

O. All cure costs associated with any Assumed Contract and any other costs to be paid with respect to any Assumed Contracts prior to closing on the respective Purchase Agreement, shall be borne by the DIP Agent. Except as explicitly stated in a Purchase Agreement, the Assets are being sold "as is, where is" with no representations or warranties by the Sellers.

P. The Sellers have the requisite power and authority to transfer the respective Assets to the DIP Agent as contemplated in each Purchase Agreement.

Q. Each Seller and the DIP Agent have entered into a Purchase Agreement wherein the parties agree that, *inter alia,* the purchase price to be paid by the DIP Agent to such Seller is the price reflected in paragraph D of this Order, subject to adjustment as provided in the Purchase Agreement (as adjusted, the "Purchase Price").

R. The consideration provided by the DIP Agent for the respective Assets shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and applicable state law.

S. The Sellers and the DIP Agent have provided adequate assurance of cure of any default existing before the date on which any such Assumed Contract is assumed and assigned, within the meaning of Bankruptcy Code section 365(b)(1)(A). The Sellers and the DIP Agent have further demonstrated adequate assurance of compensation to any counterparty to such Assumed Contracts for any of their actual pecuniary losses resulting from any default arising

prior to the date on which any such Assumed Contract is assumed and assigned, within the meaning of Bankruptcy Code section 365(b)(1)(B).

### ACCORDINGLY, THE COURT HEREBY ORDERS THAT:

1. The findings of fact set forth above and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

2. The Motion is granted as it pertains to each Sale Transaction, and the Univision Response is resolved as provided in Paragraph 13 of this Order, and withdrawn.

3. The hearing on (i) the Motion as it pertains to the DBI Agreement, (ii) the ABC Objection and (iii) the Valley Bank Objection, is continued to such date and time as Valley Bank, American Broadcasting Companies, Inc. and the Debtors may agree or the Court may otherwise order.

4. The Purchase Agreements and each of the agreements, documents and instruments executed in connection therewith (together with the Purchase Agreements, the "Transaction Documents") are approved in their entirety.

5. All parties in interest have had the opportunity to object to the relief requested in the Motion and to the extent that objections to the Motion or the relief requested therein have not been withdrawn, waived, or settled, such objections and all reservations of rights included therein are overruled on the merits. Those parties who did not object, or who

withdrew their objections, to the Motion or this Order are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

6. Each Sale Transaction is hereby approved pursuant to sections 105(a), 363(b), 363(f), 365(a), 365(b) and 365(f) of the Bankruptcy Code.

7. Each Seller is authorized, pursuant to sections 105(a), 363(b) and 365(a) of the Bankruptcy Code, to perform all of its obligations under the Transaction Documents and to execute such other documents and take such other actions as are necessary to effectuate the transactions contemplated by the respective Purchase Agreement.

8. The sale of the Assets to the DIP Agent pursuant to the Purchase Agreements will vest the DIP Agent with good title to the Assets, to the broadest extent permissible pursuant to section 363(f) of the Bankruptcy Code free and clear of all Liens (as defined in section 101(37) of the Bankruptcy Code), claims, encumbrances and interests, and Debts (as defined in section 101(12) of the Bankruptcy Code) arising under, relating to, or in connection with any of the Debtors or Excluded Liabilities claims, any obligations, demands, guaranties, options, rights, contractual commitments, restrictions, set off or recoupment rights; or similar interests or rights of any kind and nature, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement, understanding, law, equity or otherwise and will be a legal, valid and effective transfer of the Assets.

9. The Sellers' assumption of the Assumed Contracts pursuant to section 365 of the Bankruptcy Code is approved effective as of the Closing under the respective Purchase Agreement. For the avoidance of doubt, unless and until assumption of any such Assumed Contract occurs as of the Closing of a Purchase Agreement or by separate Order of this Court, the Sellers shall, upon the prior written direction of the DIP Agent, reject any Assumed Contract

pursuant to section 365 of the Bankruptcy Code and any such Assumed Contract shall not be assigned to the DIP Agent. Any counterparty to an Assumed Contract that did not object, or who withdrew their objections, to the assumption and or assignment of such Assumed Contract, is deemed to have consented to such assumption and or assignment for all purposes.

10.     Each Seller is authorized to assign the Assumed Contracts to the DIP Agent pursuant to section 365(f) of the Bankruptcy Code and as contemplated by the respective Purchase Agreement and this Order.

11.     Upon Closing, pursuant to the Purchase Agreements, the Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the DIP Agent in accordance with their respective terms, notwithstanding any provision in the Assumed Contracts (including, without limitation, those described in sections 365(c), 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Sellers shall be relieved from any further obligation or liability for any breach of the Assumed Contracts occurring after such assumption and assignment.

12.     Each counterparty to the Assumed Contracts is forever barred, estopped, and permanently enjoined from asserting against the respective Seller, its predecessors in interest, the DIP Agent, its respective successors in interest, or the property of either of them, any default accruing prior to the Closing Date, save for defaults occurring between the date of this Order and the Closing. Subject to the payment by the respective obligated party of the Cure Amounts, which such party shall pay within five (5) business days of the Closing and the Seller's receipt of the Purchase Price, subsequent to the Closing, no claims for cure or any other claims pursuant to section 365(b)(1) of the Bankruptcy Code may be asserted against the respective

Seller, the DIP Agent or their respective predecessors in interest or successors in interest with respect to the Assumed Contracts.

13. Prior to the Closing on any Purchase Agreement that provides for the assumption and assignment of any network affiliation agreement with Univision Communications, Inc. ("Univision"), the Seller(s), the DIP Agent and Univision shall confer and attempt to reach agreement on the Cure Amount with respect to such agreement. In the event that the Seller(s), the DIP Agent and Univision are unable to agree on the Cure Amount, and the DIP Agent does not exercise its right under the applicable Purchase Agreement not to assume such agreement, the Court shall determine the Cure Amount, upon notice and a hearing. Notwithstanding anything contained in this Order to the contrary, the rights of Univision with respect to Cure Amount(s) due on any of its network affiliation agreements with the Sellers are hereby preserved as provided in this paragraph.

14. If for any reason the Closing does not occur and/or the Purchase Agreement is terminated pursuant to its terms, the Seller shall be deemed not to have assumed any of the Assumed Contracts under such Purchase Agreement.

15. To the extent that a Purchase Agreement provides for the assumption and assignment of any executory contract or lease and such executory contract or lease was not identified in the Sale Motion, the respective Seller shall provide notice to all counter-parties of such contracts and/or leases (the "Additional Contracts") of (i) such Seller's intention to assume and assign the Additional Contracts to the applicable Buyer upon the Closing under the respective Purchase Agreement, (ii) the Seller's view of the amount necessary to cure any monetary default under such Additional Contract, and (iii) the need to file an objection within twenty (20) days of the date of the notice if such counter-party disputes the proposed cure

amount or otherwise objects to the proposed assumption and assignment of the Additional Contracts. The Seller shall also electronically file a copy of such notice with the Court. In the event that a counter-party objects to the proposed assumption and assignment of the Additional Contracts, the Court will schedule a hearing on the objection. In the event that no objection is timely filed, such Additional Contract will be deemed to be an Assumed Contract under this Order and such Seller will be authorized to assume and assign such Additional Contract in accordance with the terms of the applicable Purchase Agreement and this Order, without further order of this Court.

16. Upon Closing, pursuant to each Purchase Agreement, to the extent identified in the relevant Purchase Agreement, the Excluded Assets will remain in the respective Seller's estate.

17. Upon Closing, pursuant to each Purchase Agreement, to the extent identified in the relevant Purchase Agreement, the Assumed Liabilities shall be transferred to the DIP Agent.

18. The DIP Agent is authorized to assign its rights and interests in the relevant Purchase Agreements and/or the Assets (including the Assumed Contracts) in accordance with the terms of the relevant Purchase Agreement.

19. The sale and transfer of the Assets are in anticipation, and are an important component, of any plan of reorganization or liquidation of the Sellers. As such, the sale and transfer of the Assets shall be free of any stamp tax or similar tax pursuant to section 1146(a) of the Bankruptcy Code to the extent that either (i) one or more plans are confirmed under section 1129 of the Bankruptcy Code that incorporate the transfers approved herein, or (ii) such relief is otherwise permitted by applicable law.

20. No broker or other party is entitled to a commission with respect to the sale and transfer of the Assets.

21. No person shall take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Purchase Agreements or this Order.

22. The Transaction Documents may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court.

23. The failure to specifically include any particular provision of the Transaction Documents in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Transaction Documents and the Sellers' implementation of the transactions contemplated therein be approved in their entirety.

24. In the absence of a stay pending appeal, in the event that any Seller and the DIP Agent elect to consummate transactions contemplated by the relevant Purchase Agreement at any time after the entry of this Order, then with respect to the transactions approved and authorized herein, the DIP Agent, as a purchaser in good faith within the meaning of section 363(m) of the Bankruptcy Code, shall be entitled to the protections of 363(m) of the Bankruptcy Code in the event this Order or any authorization contained herein is reversed or modified on appeal.

25. The Court shall retain exclusive jurisdiction (a) over the construction, performance and enforcement of the terms and provisions of this Order, the Transaction Documents, all amendments thereto, and any waivers and consents thereunder, (b) to compel delivery of the respective Purchase Price to each Seller in accordance with the terms and conditions of the relevant Purchase Agreement, and (c) to resolve any disputes, controversies or

claims arising out of or relating to this Order or the Transaction Documents.

26. The terms of this Order shall be binding on and inure to the benefit of the Sellers, the Debtors, the DIP Agent, each non-debtor party to the Assumed Contracts and the Debtors' creditors and all other parties in interest, and any successors of the Sellers or the Debtors, the DIP Agent, each non debtor party to the Assumed Contracts, and the Debtors' creditors, including any trustee or examiner appointed in these cases or any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.

27. This Order shall be effective and enforceable immediately upon entry of this Order and the stay imposed by Bankruptcy Rules 6004(h) and 6006(d) is hereby waived.

28. Notwithstanding any other provision in this Order, no assignment of any rights and interests of the Debtors in any federal license issued by the Federal Communications Commission (the "FCC") shall take place prior to the issuance of FCC regulatory approval for such assignment pursuant to the Communications Act of 1934, as amended, and the rules and regulations promulgated there under. The FCC's rights and powers to take any action pursuant to its regulatory authority, including, but not limited to, imposing any regulatory conditions on such assignments and setting any regulatory fines or forfeitures, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority to the extent provided by law.

SIGNED  07/21/09                                        , 2009

_____
HONORABLE JAMES G. MIXON
UNITED STATES BANKRUPTCY JUDGE